DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com

BRIAN M. WILLEN (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
Email: bwillen@wsgr.com

Attorneys for Defendants
ALPHABET INC., GOOGLE INC., and
YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEANNE Q. LANCASTER, an individual,<br><br>                  Plaintiff,<br><br>          v.<br><br>ALPHABET INC., GOOGLE INC.,<br>YOUTUBE, LLC,<br><br>                  Defendants.<br>_____ | CASE NO.: 15-cv-05299-HSG<br><br>**DEFENDANTS' NOTICE OF<br>MOTION AND MOTION TO<br>DISMISS; MEMORANDUM OF<br>POINTS AND AUTHORITIES**<br><br>Before: Hon. Haywood S. Gilliam, Jr.<br>Crtrm: 15<br>Date: February 4, 2016<br>Time: 2:00 pm |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .........................................................................1

STATEMENT OF ISSUES TO BE DECIDED..............................................................1

INTRODUCTION..........................................................................................................2

STATEMENT OF FACTS..............................................................................................4

ARGUMENT .................................................................................................................7

I.      THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ...............7

II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE DMCA, THE CDA, AND THE TERMS OF THE GOVERNING AGREEMENTS ............................................................8

      A.     Section 512(g) of the DMCA Bars Any Claim Based on YouTube's Removal of Plaintiff's Videos .....................................................................8

      B.     Plaintiff's Claims Are Barred by Section 230(c) of the CDA..................12

      C.     Plaintiff's Claims Are Barred by YouTube's Governing Agreements ...................14

III.    NONE OF PLAINTIFF'S CAUSES OF ACTION STATE A VIABLE CLAIM...............17

      A.     Fraud..........................................................................................................17

      B.     Aiding and Abetting ..................................................................................18

      C.     Harassment ................................................................................................19

      D.     Intentional Infliction of Emotional Distress..............................................20

      E.     Breach of the Implied Covenant of Good Faith .......................................21

      F.     Negligence.................................................................................................22

      G.     Copyright Infringement .............................................................................23

IV.     ALPHABET IS NOT A PROPER DEFENDANT IN THIS CASE...................................24

CONCLUSION .............................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albert v. Mid-Century Ins. Co.*, 187 Cal. Rptr. 3d 211 (Cal. Ct. App. 2015) ...........................22, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................7, 17, 20

*Barnes v. Yahoo, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .....................................................................14

*BASF Corp. v. POSM II Props. P'ship, L.P.*, No. 3608-VCS, 2009 Del. Ch. LEXIS
    33 (Del. Ch. Mar. 3, 2009) .....................................................................................................25

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ............................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................7, 8, 17

*Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004) ...................................25

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ..............................................17

*Carma Developers (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710 (Cal.
    1992)......................................................................................................................................15, 22

*Casey v. U.S. Bank Nat'l Ass'n.*, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005)..................................19

*Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127 (Cal. 2009) ....................................................18

*Darnaa, LLC v. Google. Inc.*, No. 15-cv-03221-RMW, 2015 U.S. Dist. LEXIS
    161791 (N.D. Cal. Dec. 2, 2015) ...........................................................................................22

*Davidson v. City of Westminster*, 649 P.2d 894 (Cal. 1982).........................................................20

*Doe v. Gangland Prods.*, 730 F.3d 946 (9th Cir. 2013)..................................................................20

*Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*,
    785 F.2d 897 (11th Cir. 1986).................................................................................................24

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)..........................................17

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ....................................................................23

*Energy Coal, S.P.A. v. CITGO Petroleum Corp.*, No. 2:14-CV-03092, 2015 U.S.
    Dist. LEXIS 116167 (W.D. La. Aug. 26, 2015) .....................................................................25

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F. 3d 1157 (9th Cir. 2008)..........................................................................................13, 14

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 26 Cal. Rptr. 2d 762 (Cal. Ct. App. 1994)...................21

*Freeney v. Bank of Am. Corp.*, No. CV 15-02376 MMM, 2015 U.S. Dist. LEXIS
    92848 (C.D. Cal. July 15, 2015) .............................................................................................24

*Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127
(N.D. Cal. July 17, 2013) ..................................................................................13

*Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995) ...........................................................8

*Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089 (Cal. 2000) ..................................................21

*Hall v. Pelican Bay State Prison*, No. C 13-5580, 2014 U.S. Dist. LEXIS 123451
(N.D. Cal. Sept. 3, 2014) ...................................................................................8

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .....................................8

*In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530 (Del. Ch. 2001) .......................24

*Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266 (9th Cir. 1982) .................17

*Jenkins v. JPMorgan Chase Bank, N.A.*, 156 Cal. Rptr. 3d 912 (Cal. Ct. App. 2013) ..................21

*Juarez v. Boy Scouts of Am., Inc.*, 97 Cal. Rptr. 2d 12 (Cal. Ct. App. 2000)..................22

*Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010) ................................13

*Kwan v. Schlein*, 441 F. Supp. 2d 491 (S.D.N.Y. 2006) ..........................................23

*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015).................................11

*Lorretz v. Jewish Fed'n*, No. 2:12-cv-1796, 2012 U.S. Dist. LEXIS 98551 (E.D.
Cal. July 16, 2012) ..........................................................................................8

*Morales v. Bank of N.Y. Mellon*, No. 13-cv-04092-JSC, 2014 U.S. Dist. LEXIS
105367 (N.D. Cal. July 30, 2014) ...................................................................15

*Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d 813 (Cal. Ct. App. 2014)..................19

*Noble v. Sears, Roebuck & Co.*, 109 Cal. Rptr. 269 (Cal. Ct. App. 1973)..................22

*Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629 (Del. 1968) .........................25

*Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992) ..............................................17, 22

*Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110 (N.D. Cal. 2013) ..............19

*Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000 (9th Cir. 2004).................11

*Sikhs for Justice "SFJ", Inc. v. Facebook*, No. 15-CV-02442-LHK, 2015 U.S. Dist.
LEXIS 154716 (N.D. Cal. Nov. 13, 2015)...............................................3, 13, 14

*Song Fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 56 (D.D.C. 2014) .........................15

*United States v. Bestfoods*, 524 U.S. 51 (1998) .............................................4, 24

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012)........................2, 4, 9

*Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013)..............9, 10

*VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F. Supp. 773 (S.D.N.Y. 1969)..............15

*Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ....................................................16

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ..........................................................12

## STATUTES & LEGISLATIVE HISTORY

17 U.S.C. § 106 ......................................................................................................................23

17 U.S.C. § 506(c) .................................................................................................................23

17 U.S.C. § 512(c) ....................................................................................................... *passim*

17 U.S.C. § 512(f) ..................................................................................................................11

17 U.S.C. § 512(g) ...................................................................................................... *passim*

17 U.S.C. § 512(i) ..................................................................................................................19

17 U.S.C. § 512(m) ................................................................................................................11

28 U.S.C. § 1331 .....................................................................................................................7

28 U.S.C. § 1441 .....................................................................................................................7

47 U.S.C. § 230(c) ....................................................................................................... *passim*

47 U.S.C. § 230(e) .................................................................................................................14

47 U.S.C. § 230(f) ..................................................................................................................13

Cal. Civ. Pro. Code § 527.6 ..................................................................................................19

S. Rep. No. 105-190 (1998) ..............................................................................................9, 10

## RULES

Fed. R. Civ. P. 8(a)(2) ........................................................................................................2, 7

Fed. R. Civ. P. 9(b) ..........................................................................................................17, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 7, 17

Fed. R. Evid. 201 ...................................................................................................................15

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2016, at two o'clock in the afternoon, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, Courtroom 15—18th Floor, 450 Golden Gate Avenue, San Francisco, Defendants Alphabet Inc., Google Inc., and YouTube, LLC (collectively "Defendants" or "YouTube") will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Complaint with prejudice.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Are Plaintiff's claims barred by Section 512(g) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(g)?

2.    Are Plaintiff's claims barred by Section 230(c) of the Communications Decency Act, 47 U.S.C. § 230(c)?

3.    Are Plaintiff's claims barred by the contractual agreements governing Plaintiff's use of the YouTube service and her ability to monetize videos that she posted on YouTube?

4.    Does Plaintiff's Complaint state a claim for which relief can be granted?

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3    YouTube, LLC ("YouTube") operates a popular online service that allows users to post

4  original videos, create "channels" to showcase their videos, and in some cases display

5  advertisements in connection with the videos they uploaded under a revenue-sharing agreement

6  with YouTube. As an online "service provider" protected by the safe-harbor provisions of the

7  Digital Millennium Copyright Act, 17 U.S.C. § 512 et seq. ("DMCA"), YouTube removes or

8  disables access to user-submitted videos in response to DMCA-compliant "takedown notices,"

9  which identify material on YouTube that copyright owners believe infringes their rights. *See*

10  *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012). This case arises out of the

11  operation of YouTube's DMCA takedown process.

12    In an effort to promote her YouTube channel, Plaintiff Deanne Q. Lancaster ("Plaintiff")

13  alleges that she uploaded videos containing certain public-domain works. While the allegations

14  in Plaintiff's pro se complaint are confusing and difficult to parse, Plaintiff appears to be alleging

15  that, in response to what she contends were "false" claims from rights holders asserting

16  copyright infringement, YouTube removed Plaintiff's videos and/or removed advertisements

17  from those videos, in furtherance of some ill-defined scheme to misdirect advertising revenue

18  from her channel. Plaintiff further alleges, without any basis or support, that YouTube and its

19  employees have harassed her, including by hacking, cyber-stalking, and intercepting her

20  electronic communications, causing her to suffer various physical and mental maladies.

21    Plaintiff's complaint is a tangle of paranoia and unfounded, implausible allegations that

22  fail to satisfy Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "short and plain

23  statement of the claim." To the extent the complaint is decipherable, it fails to state any legally

24  cognizable cause of action against YouTube. That is so for multiple independent reasons.

25    *First*, Plaintiff's claims fail in light of the protections provided by the DMCA itself.

26  Section 512(g) of the DMCA expressly immunizes a service provider for claims arising out of its

27  removal of user-posted content that is identified as infringing someone else's copyright:

28       [A] service provider shall not be liable to any person for any claim based on the
         service provider's good faith disabling of access to, or removal of, material or

activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, ***regardless of whether the material or activity is ultimately determined to be infringing***.

17 U.S.C. § 512(g) (emphasis added). This provision applies here. What YouTube did—remove or disable access to material on its service in response to a claim of infringement—is precisely what the DMCA says cannot be the basis for "any claim" of liability. As the plain language of the statute makes clear, moreover, it does not matter whether the material at issue was or was not actually infringing.

*Second*, Plaintiff's effort to hold YouTube liable for removing content from its service is barred by section 230(c) of the Communications Decency Act, 47 U.S.C. § 230(c) ("CDA"). This provision gives "interactive computer service" providers such as YouTube broad immunity from claims arising from their editorial decisions regarding material posted by users on their services. The statute bars any claim that seeks to treat a service provider as the "publisher or speaker" of information provided by a user, and it expressly precludes liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider … considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." *Id*. § 230(c)(1)-(2). As Judge Koh recently held in a case dismissing claims against Facebook for removing content that the plaintiff had posted on its service, the "decision to block access to—or, in other words, to refuse to publish"—user content is clearly publisher conduct immunized by the CDA. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, No. 15-CV-02442-LHK, 2015 U.S. Dist. LEXIS 154716, at *13, 18 (N.D. Cal. Nov. 13, 2015).

*Third*, Plaintiff's claims (under various causes of action) based on the disabling of her videos and related advertisements runs headlong into the governing agreements that she herself accepted in connection with her use of YouTube. Those agreements specifically allow YouTube to "discontinue any aspect of [its] service at any time." *See* Declaration of Brian M. Willen in Support of Motion to Dismiss ("Willen Decl."), Ex. A. They also say clearly that "YouTube will remove all Content if properly notified that such Content infringes on another's intellectual property rights," and they make clear that a user's right to run ads along with their videos "is subject to termination at any time at Google's sole discretion." Willen Decl. Exs. A-B. These

provisions reflect the broad discretion that YouTube has to remove material from its service and operate its advertising programs as it sees fit, without having those decisions subject to second-guessing by users displeased with the decisions it makes. YouTube's contractual rights preclude any claim that YouTube violated a duty or promise to Plaintiff by removing her videos or preventing her from monetizing the content she uploaded.

Beyond all that, Plaintiff fails to state a legally viable claim in connection with any of the specific causes of action that she invokes. Her complaint generally fails to establish the elements of those causes of action, much less plausibly allege facts to support them.

For all of these reasons, Plaintiff's complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff asserts claims against Alphabet Inc. ("Alphabet"), Google Inc. ("Google), and YouTube (collectively "Defendants" or "YouTube"). Google is a Delaware corporation headquartered in Mountain View, California. Google is the parent company of YouTube, a Delaware corporation headquartered in San Bruno, California. On October 2, 2015, Google implemented a holding company reorganization, which resulted in Alphabet, Inc., a newly created entity, owning all outstanding capital stock of Google.[1]

YouTube is a well-known online service provider, which allows users to "watch, upload, and share personal video clips." *Viacom*, 676 F.3d at 28. Users watch videos on YouTube billions of times per day, and hundreds of hours of new video is uploaded to the site every minute. *Id.*; Compl. ¶ 96. YouTube is a "service provider" under the DMCA "safe harbor" that protects such providers against claims of copyright infringement based on material stored on their systems at the direction of their users. *See* 17 U.S.C. § 512(c); *Viacom*, 676 F.3d at 26, 42. As a predicate to safe harbor protection, YouTube complies with the notice-and-takedown

---

[1] As discussed below, there is no basis for any claim against Alphabet, which is merely the holding company parent of Google, which in turn owns YouTube. Under basic principles of corporate law, the claims against Alphabet should be dismissed, regardless of the merit of Plaintiff's claims against Google and/or YouTube. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries.").

procedure set forth in section 512(c)(1)(C) of the DMCA: "upon notification of claimed infringement …, [YouTube] responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C); *see also* Compl. ¶ 89 (noting that YouTube has developed procedures to address copyright infringement).

Pro se Plaintiff Deanne Q. Lancaster is an individual who resides in Ohio. Compl. ¶ 9. According to her complaint, Plaintiff joined YouTube in 2013 in order to share her video poems. *Id.* ¶ 30. In doing so, Plaintiff had to accept YouTube's governing Terms of Service agreement. *See, e.g., id.* ¶ 7; *see also* Willen Decl. Ex. A; Request for Judicial Notice in Support of Motion to Dismiss. As best Defendants can understand the disjointed allegations set out in the complaint, Plaintiff broadly challenges YouTube's responses to takedown requests that it received for certain videos Plaintiff uploaded to the service. Unhappy with her channel's small viewership, Plaintiff alleges that she "decided to upload videos of classic TV shows and movies to entice new viewers." Compl. ¶ 30. She signed up for YouTube's Partner Program, which allows users under certain conditions to monetize videos that they post on the service (that is, run advertisements against those videos and share the revenues with YouTube). *Id.* ¶ 9. In joining this program, Plaintiff had to accept the Partner Program Terms that govern YouTube's monetization offerings. *Id.* ¶ 159; *see also* Willen Decl. Exs. B-C.

Subsequently, Plaintiff claims, her YouTube channel was the subject of hundreds of takedown notices and other similar copyright complaints. *Id.* ¶ 6. Plaintiff alleges that these notices are "wrong" and "false," in that the videos she posted contained material that was in the public domain. *Id.* ¶¶ 1, 6, 32. Although she generally alleges that the copyright claims originate from third-party copyright owners unaffiliated with Google or YouTube, *see id.* ¶¶ 1-2, 32-36, 65-66, 86-87, 92 (describing "false copyright claimants" and "false administrators"), Plaintiff seeks to hold YouTube liable for responding to those notices under the DMCA framework. While she occasionally states in a conclusory (and totally unsupported) way that YouTube is directly responsible for generating false takedown notices, *see, e.g., id.* ¶ 105, the thrust of her complaint appears to take issue with YouTube's purported failure to check the validity of

copyright claims lodged by third parties against her videos. *See id.* ¶¶ 90-91 ("YouTube allows

anyone to submit claims for videos … without any quality control.… YouTube will then …

accuse the partner of copyright infringements, and take the earnings from that partner and turn it

over to the false claimant, thus enriching themselves and others."); s*ee also id.* ¶¶ 1, 32-33, 92,

98-99, 100-111. Plaintiff accuses YouTube of disregarding her requests to restore some of her

videos, *id.* ¶¶ 110, 174, though she never alleges that she submitted valid "counter notifications"

under the procedures established by the DMCA, *see* 17 U.S.C. § 512(g)(2)-(3), and she

acknowledges that some of her videos were restored after she objected. Compl. ¶ 111; Compl.

"Summary" Dkt. 1-1 at ECF pp. 53-54.

   Beyond these allegations, Plaintiff's complaint devolves into conspiracy theories.

Plaintiff sketches out an elaborate scenario, whereby "a YouTube/Google employee has been

stalking, hacking, cracking, and torturing plaintiff for years." *Id.* ¶ 79. The following are

representative of Plaintiff's farfetched allegations:

- Google took over her home computer and changed her passwords ……. Google even caused a malfunction of the Internet search by causing duplicate words or nonsense letters to appear in the search box, and … causing the cursor to jump to the end of the search words after each letter plaintiff typed…. Google had intercepted an email from Chase bank to Ms. Lancaster [and] reworded the email. *Id.* ¶¶ 43-53.

- YouTube has hacked plaintiff's cell phone and home computers and has rendered her laptop ineffective by changing settings in the registry and control panel, corrupting settings, disabling passwords, controlling the web browser … and even disturbed her watching movies and playing Sudoku online. *Id.* ¶ 130.

- YouTube has done very petty things like changing the tabs on her web browser. A small tab suddenly showed up on plaintiff's Firefox browser. This tab was labeled DAD for the music distribution group, Dance All Day and it could not be removed; there was no X (close). At the time this occurred plaintiff had been looking into Dance All Day to see if their website was real. *Id.* ¶ 134.

- Someone at YouTube stole her identity and purchased an $800 cell phone from her Fingerhut account…. YouTube constantly breaks into any program she is working on and stops or impairs the program." *Id.* ¶¶ 142-146.

   Plaintiff alleges the following claims: (1) "declaratory relief"; (2) fraud; (3) aiding and

abetting; (4) harassment; (5) intentional infliction of emotional distress; (6) breach of the

covenant of good faith and fair dealing; (7) copyright infringement; (8) email tampering; (9)

computer hacking under the federal Computer Fraud and Abuse Act ("CFAA"); and (10)

negligence. Plaintiff originally filed this action in California state court, but YouTube removed it to this Court under 28 U.S.C. § 1331 and § 1441, based on the presence of several claims arising under federal law. *See* Dkt. 1.

**ARGUMENT**

Plaintiff's claims should be dismissed for multiple reasons. On its face, the complaint fails to assert a "short and plain statement" of Plaintiff's claims, as required by Rule 8; instead, her complaint is a jumble of implausible paranoia. Beyond the facial deficiency of her approach, Plaintiff's effort to impose liability on YouTube for removing videos from her YouTube channel is barred by section 512(g) of the DMCA, section 230(c) of the CDA, and YouTube's clear contractual rights to act as it did. The DMCA immunizes YouTube against "any claim" arising from its good faith removing or disabling material that is "claimed to be infringing." 17 U.S.C. § 512(g). Likewise, the CDA protects YouTube from liability for publisher decisions to block or restrict access to user-posted content. And YouTube is expressly permitted by the agreements governing its service—which Plaintiff accepted when she created a YouTube account and began monetizing her videos—to remove videos "if properly notified that such Content infringes on another's intellectual property rights," and to terminate a user's ability to monetize videos "at any time at [its] sole discretion." Willen Decl. Exs. A-B. Apart from these clear legal protections, none of the claims that Plaintiff asserts is legally viable, and thus the entire complaint must be dismissed under Rule 12(b)(6). Because any amendment would be futile, the dismissal should be with prejudice.

## I.     THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint also must state a "*plausible* claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's complaint fails to satisfy this standard. Rather, Plaintiff's allegations sound in paranoia, enumerating various unrelated technological inconveniences and annoyances without any rational or plausible connection to YouTube. When considering a motion to dismiss, "the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). This is equally true when addressing a pro se plaintiff's complaint. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."). Courts are not required to allow any conspiracy theory set out in a complaint to proceed to discovery. Indeed, it is routine to dismiss pro se complaints that recite facially implausible allegations. *See, e.g.*, *Hall v. Pelican Bay State Prison*, No. C 13-5580, 2014 U.S. Dist. LEXIS 123451, at *7 (N.D. Cal. Sept. 3, 2014) ("Plaintiff's allegations … fall somewhere between the implausible and the delusional, and are insufficient to state a claim."); *Lorretz v. Jewish Fed'n*, No. 2:12-cv-1796, 2012 U.S. Dist. LEXIS 98551, at *6 (E.D. Cal. July 16, 2012) (recommending dismissal of complaint with prejudice where pro se plaintiff's allegations were "patently frivolous and implausible"), *adopted by* Order (E.D. Cal. Aug. 22, 2012). That is the situation here. Plaintiff's farfetched allegations regarding YouTube's supposed "stalking, hacking, cracking, and torturing" of Plaintiff (among other things) are implausible on their face and not supported by concrete factual allegations. They are delusions disguised as legal claims, and fail to provide adequate notice of the claims asserted or the facts giving rise to them. Dismissal is warranted on this basis alone.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE DMCA, THE CDA, AND THE TERMS OF THE GOVERNING AGREEMENTS

Beyond the wildly implausible and unsupported allegations, Plaintiff's claims fail as a matter of law in the face of several overarching legal barriers.

### A.   Section 512(g) of the DMCA Bars Any Claim Based on YouTube's Removal of Plaintiff's Videos

Plaintiff's effort to sue YouTube for removing material from its service in response to notifications of copyright infringement runs headlong into section 512(g) of the DMCA. The

DMCA was enacted to "clarif[y] the liability faced by service providers who transmit potentially infringing material over their networks." *Viacom*, 676 F.3d at 27 (quoting S. Rep. No. 105-190 at 2 (1998) (alteration in original)). The statute "limits the liability of online service providers for copyright infringement that occurs 'by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider.'" *Id.* at 25 (quoting 17 U.S.C. § 512(c)). To qualify for this safe harbor protection, a service provider must, among other things, register an agent to comply with the DMCA's notice-and-takedown procedure. 17 U.S.C. § 512(c)(2). That procedure allows copyright owners to send takedown requests for items they believe to be infringing and instructs service providers, "upon notification of claimed infringement," to "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C); *see generally Viacom Int'l, Inc. v. YouTube, Inc.* ("*Viacom II*"), 940 F. Supp. 2d 110, 114-15 (S.D.N.Y. 2013).

To ensure that service providers who remove material based on claims of copyright infringement do not then face liability from those whose content they have removed, Congress provided additional incentives for service providers to honor third-party infringement claims. Specifically, section 512(g) of the DMCA "immunizes service providers from any claim based on the service provider's good faith disabling access to, or removal of, material or activity claimed to be infringing." S. Rep. No. 105-190, at 50. That provision reads as follows:

> **(1) No liability for taking down generally.**
> Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

17 U.S.C. § 512(g)(1). As the legislative history explains, the "purpose of this subsection is to protect service providers from liability to third parties whose material service providers take down in a good faith effort to comply with the requirements of section (c)(1)." S. Rep. No. 105-190, at 50.

1    That is precisely what happened here. As the allegations in the complaint reveal,

2    YouTube has a robust policy of responding to DMCA takedown notices. *See, e.g.*, Compl. ¶¶ 1,

3    32, 86-97; Compl. Ex. E; *Viacom II*, 940 F. Supp. 2d at 115. This case arises from YouTube's

4    removal of Plaintiff's videos based on such notices and other similar requests, in which

5    copyright owners represented to YouTube that those videos infringed their copyrights. *See, e.g.*,

6    Compl. ¶ 98 (acknowledging that YouTube employees removed Plaintiff's videos "because they

7    receive a takedown notice from a claimant"); *id*. ¶ 149 (explaining that individuals "requesting

8    the takedown [of YouTube content] must certify that: 'The information in this notification

9    (Copyright Infringement) is accurate, and under the penalty of perjury, I am the owner, or agent

10   authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed.'").

11   Based on these notices, Plaintiff's videos were "material or activity claimed to be infringing"

12   under section 512(g), and YouTube's safe harbor for those videos could have been at risk if it

13   had failed to expeditiously remove them. The DMCA does not allow YouTube to face liability

14   from Plaintiff for honoring such third-party copyright claims.[2]

15   The fact that Plaintiff believes that the takedown requests were false and that her videos

16   were not infringing is irrelevant. Congress could not have been clearer that section 512(g)'s

17   immunity applies "regardless of whether the material or activity is ultimately determined to be

18   infringing." 17 U.S.C. § 512(g)(1); *see* S. Rep. No. 105-190, at 50 ("This immunity applies even

19   if the material or activity is ultimately determined not to be infringing."). Indeed, the whole point

20   of section 512(g) is to avoid putting service providers between a rock and a hard place: between

21   preserving their safe harbor in the face of infringement claims and potentially being liable to

22

23   _____

   [2] To be sure, section 512(g) requires that the service provider follow the counter-notice

24   procedure described in section 512(g)(2). But the allegations in the Complaint confirm that,
     insofar as Plaintiff submitted valid DMCA "counter-notices" requesting that YouTube restore

25   the videos that had been removed, YouTube responded properly. For example, Plaintiff alleges
     that on August 28, 2015, she challenged the takedown of "the public domain film, Martin

26   Luther"; on September 15 (*i.e.,* 11 business days later), YouTube notified her that the video had
     been restored. Compl. "Summary" Dkt. 1-1 at ECF pp. 53-54. Even assuming Plaintiff complied

27   with the formal requirements of section 512(g)(2), YouTube acted as the statute directs. *See* 17
     U.S.C. § 512(g)(2)(C) (material must be replaced "not less than 10, nor more than 14, business

28   days following receipt of the counter notice").

those whose material is removed if the claim turns out to be wrong. That is why the actual

validity of the claim notice does not matter and why the provider is not required to look beyond

the face of the claim to investigate whether its factual and legal assertions are accurate. *Cf.* 17

U.S.C. § 512(m) ("Nothing in this section shall be construed to condition the applicability of

subsections (a) through (d) on … a service provider monitoring its service or affirmatively

seeking facts indicating infringing activity…."). Plaintiff's effort to impose liability on YouTube

resurrects the dilemma that section 512(g) was intended to resolve.

Likewise, while the statute requires "good faith," that means simply that YouTube must

have *subjectively believed* that the takedown notices it received were valid. Consider section

512(f) of the DMCA. This provision creates a civil cause of action against copyright owners who

send knowingly false takedown notices.[3] In this analogous context, the Ninth Circuit has

explained that the statutory requirement that a copyright owner have "*a good faith belief* that the

use of the material in the manner complained of is not authorized," 17 U.S.C. § 512(c)(3)(A)(v)

(emphasis added)), means that "a copyright holder need only form a *subjective* good faith belief

that a use is not authorized." *Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1134 (9th Cir. 2015)

(emphasis added). "When enacting the DMCA, Congress could have easily incorporated an

objective standard of reasonableness. The fact that it did not do so indicates an intent to adhere to

the subjective standard traditionally associated with a good faith requirement." *Rossi v. Motion

Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004)). The same is true in section

512(g). For purposes of that provision, the "good faith" removal of material claimed to be

infringing requires only that the service provider have a subjective belief that the copyright claim

was valid. The statute does not require that the provider's belief be correct or even objectively

---

[3] Insofar as Plaintiff believes that the copyright claims YouTube received were false, her recourse is not to sue YouTube but instead to bring a claim under section 512(f) against the "false copyright claimants" who sent those notices. 17 U.S.C. § 512(f)(2). Plaintiff has not invoked section 512(f) in this case, however, nor could she. That provision allows for liability *only* against the copyright claimant; it does not authorize claims against service providers who receive and process such claims. And, of course, section 512(g) expressly bars such claims against service providers.

1  reasonable. Instead, section 512(g) applies where the provider acts in response to what it believes

2  to be a facially sufficient DMCA notice or other similar assertion of infringement.

3        Here, while Plaintiff alleges in conclusory fashion that YouTube wanted to harass

4  Plaintiff by removing or disabling content from Plaintiff's channel, *e.g.*, Compl. ¶¶ 37, 166, the

5  Complaint alleges no plausible facts suggesting that YouTube's removal of content was not

6  actually based on the takedown requests it received or that YouTube did not subjectively believe

7  that the copyright claims were valid. There is nothing in the complaint suggesting that those

8  claims were facially defective or that they so clearly lacked the elements for a valid takedown

9  notice that YouTube could not in good faith rely on them. Nor is there anything else, beyond

10  Plaintiff's bald-face and unsupported conspiracy theories, to suggest that YouTube failed to act

11  in good faith. To the contrary, this case presents precisely the situation for which section 512(g)

12  was designed. That immunity applies and protects YouTube against "any claim" based on its

13  removal of Plaintiff's videos in response to the third-party takedown requests it received.

14        **B.**     **Plaintiff's Claims Are Barred by Section 230(c) of the CDA**

15        Section 512(g) of the DMCA is not the only immunity that protects online services

16  against claims arising from their removal of content from their systems. Under section 230(c) of

17  the CDA, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's

18  traditional editorial functions—such as deciding whether to publish, *withdraw*, postpone, or alter

19  content—are barred.'" *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis

20  added). The statute provides this protection in mutually reinforcing ways. First, it precludes any

21  effort to treat the "provider" of an "interactive computer service" as the "publisher or speaker of

22  any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

23  Second, it says expressly that "[n]o provider or user of an interactive computer service shall be

24  held liable on account of … any action voluntarily taken in good faith to restrict access to or

25  availability of material that the provider or user considers to be … otherwise objectionable." *Id.*

26  § 230(c)(2).

27        These provisions ensure that online service providers can operate as platforms for user-

28  submitted content without fear of liability either for hosting such content or for making editorial

1    decisions regarding it—in particular, the decision to remove or withdraw certain items. As the

2    Ninth Circuit, sitting en banc, has explained: "any activity that can be boiled down to deciding

3    whether to exclude material that third parties seek to post online is perforce immune under

4    section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d

5    1157, 1170-71 (9th Cir. 2008); *cf. Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003)

6    ("Congress wanted to encourage the unfettered and unregulated development of free speech on

7    the Internet, and to promote the development of e-commerce…. Section 230 therefore sought to

8    prevent lawsuits from shutting down websites and other services on the Internet.").

9        That is precisely the situation here. YouTube is an "interactive computer service" under

10    the CDA's broad definition of that term. 47 U.S.C. § 230(f)(2) ("any information service, system,

11    or access software provider that provides or enables computer access by multiple users to a

12    computer server").[4] And Plaintiff's claims arise from YouTube's alleged removal of material

13    that Plaintiff uploaded. Plaintiff thus seeks to hold YouTube liable for engaging in a traditional

14    editorial function—withdrawing someone else's content from publication on its service. That is

15    not allowed by section 230(c)(1). Likewise, YouTube's voluntary action "to restrict access to"

16    Plaintiff's videos because it considered them to be "objectionable" (in light of the takedown

17    notices it received asserting that they contained infringing material) is exactly what section

18    230(c)(2) covers.

19        This case is similar to *Sikhs for Justice v. Facebook*, *supra*, in which Judge Koh held that

20    section 230(c) immunized Facebook against claims arising from the removal of user-submitted

21    content. There, after Facebook blocked access to its Facebook page, the plaintiff ("SFJ") claimed

22    that the removal was unlawful and violated its civil rights under federal and state anti-

23    discrimination laws. *See Sikhs for Justice*, 2015 U.S. Dist. LEXIS 154716, at *3-4. The court

24    held, as a matter of law, that the CDA barred claims based on Facebook's removal of third-party

25

26

27

28

---

[4] Numerous courts have held that Google and YouTube qualify as "interactive computer services." *See, e.g.*, *Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127, at *2-8 (N.D. Cal. July 17, 2013) (CDA immunized Google from liability arising from allegedly defamatory videos posted to YouTube); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (Google is an "interactive computer service").

content. *Id.* at \*7-18. It agreed with Facebook that the "blocking of the [plaintiff's] Page in India … is publisher conduct immunized by the CDA." *Id*. at \*15. As Judge Koh explained: "Plaintiff seeks to hold Defendant liable for Defendant's decision 'whether to publish' third-party content.… 'But removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher.'" *Id*. at \*16-17 (quoting *Barnes v. Yahoo, Inc*. 570 F.3d 1096, 03 (9th Cir. 2009)).

The same result is warranted here. Like SFJ, Plaintiff seeks to hold an interactive computer service liable for its decision to withdraw Plaintiff's material from publication on its platform. But that traditional publisher decision is protected by section 230(c). "It is because such conduct is *publishing conduct* that we have insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71) (emphasis in original). For this reason as well, Plaintiff's claims based on the removal of her videos from YouTube must be dismissed with prejudice. *See Sikhs for Justice*, 2015 U.S. Dist. LEXIS 154716, at \*18 (refusing to grant leave to amend and explaining that the CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles" (quoting *Roommates*, 521 F.3d at 1175)).[5]

### C.   Plaintiff's Claims Are Barred by YouTube's Governing Agreements

Plaintiff's effort to hold YouTube liable for removing her videos and/or preventing her from monetizing those videos on YouTube runs into yet another barrier: the agreements that Plaintiff entered into with YouTube when she created her accounts on the service. Those agreements unequivocally allow YouTube to remove videos that it believes to be infringing copyright and to stop users from monetizing such videos "at any time." Willen Decl. Exs. A-C. Given YouTube's express contractual rights, Plaintiff cannot premise any claim on the idea that YouTube violated some duty by taking the actions that it did.

---

[5] Section 230(c) has an exception for claims "pertaining to intellectual property." 47 U.S.C. § 230(e)(2). The only such claim Plaintiff asserts is a claim for copyright infringement, which, as discussed below, fails for other reasons. The rest of Plaintiff's claims are barred by the CDA.

1   There are at least two relevant agreements here. *First*, YouTube's Terms of Service

2   Agreement, located at <www.youtube.com/terms>, governs the overall relationship between

3   YouTube and its users. To upload videos, a user must create a YouTube account, which requires

4   agreement to these terms. Compl. ¶ 7; s*ee, e.g.*, *Song Fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53,

5   56 (D.D.C. 2014). *Second*, a user who wishes to monetize her videos (and thus become a

6   "YouTube partner") must also agree to YouTube's Partner Program Terms, located at

7   <www.youtube.com/account_monetization>. Plaintiff alleges that she joined YouTube in the

8   spring of 2013 as a "YouTube partner." Compl. ¶¶ 30, 31. Plaintiff thus necessarily agreed to

9   both the Terms of Service and to the Partner Program Terms. These agreements dispose of many

10  of her claims.[6]

11      As an initial matter, YouTube's Terms of Service expressly authorize YouTube to

12  remove content in its discretion, especially where, as here, YouTube receives notices of

13  copyright infringement. The Terms provide that "YouTube will remove all Content if properly

14  notified that such Content infringes on another's intellectual property rights" and permit

15  YouTube "to discontinue any aspect of the Service at any time." Willen Decl. Ex. A ¶¶ 6(F),

16  4(J). These broad contractual rights defeat any claim that YouTube, by removing videos

17  uploaded by Plaintiff, somehow breached an obligation or duty to Plaintiff. This rules out

18  Plaintiff's claim for breach of contract and negligence. *See, e.g.*, *Carma Developers (Cal.) Inc. v.*

19  *Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992))) ("As to acts and conduct authorized

20  by the express provisions of the contract, no covenant of good faith and fair dealing can be

21  implied which forbids such acts and conduct. And if defendants were given the right to do what

22  they did by the express provisions of the contract there can be no breach." (quoting *VTR, Inc. v.*

23  *Goodyear Tire & Rubber Co.*, 303 F. Supp. 773, 777-78 (S.D.N.Y. 1969))); *Morales v. Bank of*

24  *N.Y. Mellon*, No. 13-cv-04092-JSC, 2014 U.S. Dist. LEXIS 105367, at *19 (N.D. Cal. July 30,

25

26

27      [6] As explained in YouTube's separately filed Request for Judicial Notice, both the Terms of Service and the Partner Program Terms are properly considered in connection with this motion because they are incorporated by reference into Plaintiff's Complaint and also subject to judicial

28  notice under Fed. R. Evid. 201. *See* Request for Judicial Notice in Support of Motion to Dismiss; Willen Decl. Exs. A-C.

1   2014) ("There was therefore no breach of the implied covenant of good faith and fair dealing as

2   Defendants were acting within the express terms of the [agreement], and this cause of action is

3   dismissed for failure to state a claim."). The Terms similarly preclude a claim that YouTube

4   acted fraudulently. Beyond Plaintiff's failure to identify a misrepresentation upon which she

5   relied (discussed below), the removals that she alleges to be wrongful are unambiguously

6   permitted by the Terms. Acting pursuant to a known agreement, which Plaintiff accepted before

7   posting her videos, cannot constitute fraud.[7]

8          YouTube's Partner Program Terms similarly bar any claims arising from the decision to

9   prevent Plaintiff from monetizing her videos. The 2013 Partner Program Terms expressly state

10  that the user's agreement to allow YouTube to "'monetize' or run ads against [a user's]

11  videos … is subject to termination at any time at Google's sole discretion." Willen Decl. Ex. B.

12  An updated version of the Terms, which Plaintiff accepted in 2015, provides that "YouTube is

13  not obligated to display any advertisements alongside [a user's] videos and may determine the

14  type and format of ads available on the YouTube Service." Willen Decl. Ex. C ¶ 1.1. These

15  Terms also say that "YouTube may either suspend or terminate [a user's] participation in the

16  YouTube Partner Program immediately … if YouTube reasonably determines or suspects that

17  [the user has] violated these Terms." *Id*. ¶ 4. Moreover:

18         You are not entitled to earn or receive any revenues in connection with your
           Content in any of the following circumstances: (a) if one or more third parties
19         claim rights to certain elements of your Content except in cases where YouTube's
           policies or systems support sharing a portion of the revenues with you, as
20         determined by YouTube; (b) if monetization is disabled on your Content by either
           you or YouTube; or (c) your participation in the YouTube Partner Program is
21         suspended or terminated [for a violation of YouTube's Terms of Service or Partner
           Program Terms].

22

23

24

---

25         [7] Under these provisions, whether Plaintiff's videos were *actually* infringing is not relevant.
    Because YouTube was properly notified (via DMCA notices) that the videos infringed on
26  someone else's rights, the Terms gave it permission to remove the videos. Doing so cannot be a
    basis for liability under a breach of contract or similar theory. *Cf. Zepeda v. PayPal, Inc.*, 777 F.
27  Supp. 2d 1215, 1220 (N.D. Cal. 2011) ("Even assuming that Plaintiffs did not engage in any
    restricted activities … the user agreement contains at least two other provisions that give PayPal
28  broad discretion to place holds on its user accounts, neither of which requires that the users have
    engaged in restricted activities.").

*Id*. ¶ 3. In short, these agreements expressly authorize YouTube to determine whether content is eligible for monetization, to stop certain videos from being monetized, and to withhold revenues in the precise circumstances described by Plaintiff. Such broad and clear contractual rights rule out any claim that YouTube breached a duty to Plaintiff by preventing her from continuing to monetize certain of her videos in response to third-party allegations of copyright infringement.

Accordingly, Plaintiff's claims for breach of the implied covenant of good faith, negligence, and fraud must be dismissed based on the plain terms of the governing agreements.

## III. NONE OF PLAINTIFF'S CAUSES OF ACTION STATE A VIABLE CLAIM

In addition to all of the problems described above, each of Plaintiffs' claims also fails on its own terms. A complaint should be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although the Court must construe a pro se complaint liberally, it "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Here, none of the specific claims Plaintiff advances is legally viable: Plaintiff fails to allege the essential elements of many of those claims; the rest are not supported by the kind of plausible factual allegations required for a complaint to satisfy the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*.

### A. Fraud

A plaintiff who alleges fraud is subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (alteration in original)). Even beyond the language of the governing agreements (which, as discussed above, independently preclude her fraud claim), Plaintiff does not come close to meeting this high bar.

1   Plaintiff alleges that "Google/YouTube misrepresented to plaintiff that partners would get

2   a certain percentage of advertising revenue," Compl. ¶ 159, but she identifies no statement from

3   YouTube or Google indicating that partners have an absolute right to monetization of content

4   they post to YouTube. To the contrary, the governing Partner Program Terms agreement makes

5   clear that they do not. *See* Willen Decl. Ex. C ¶¶ 1.1, 3, 4. Similarly, Plaintiff claims that "[e]ach

6   time a YouTube employee removes one of plaintiff's public domain (PD) videos from the service

7   because they receive a takedown notice from a claimant they make a false statement of material

8   fact," but she does not identify the false statement at issue. *Id*. ¶ 98. Absent such specific factual

9   allegations, Plaintiff cannot satisfy the heightened pleading requirements of Rule 9(b).

10   In addition, Plaintiff fails to allege "justifiable reliance" on YouTube's allegedly

11   fraudulent statements—an essential element of fraud under California law. *See Conroy v.*

12   *Regents of Univ. of Cal.*, 203 P.3d 1127, 1135 (Cal. 2009). While Plaintiff alleges that "YouTube

13   deceived plaintiff by claiming she was not eligible for a counter-notification when in fact she

14   was," Plaintiff goes on to explain that she in fact submitted a (noncompliant) free-form counter

15   notification to YouTube and had content restored to her channel—despite YouTube having no

16   statutory obligation to act. Compl. ¶ 174; Compl. Ex. P. Plaintiff thus disclaims any reliance on

17   YouTube's alleged misrepresentation. Similarly, Plaintiff alleges that "YouTube deceived Ms.

18   Lancaster into believing that an authoritative voice was correct in claiming a certain video owned

19   by BMG Rights Management," *id*. ¶ 173, but she alleges no facts showing that YouTube knew of

20   the alleged falsity or intended to induce Plaintiff's reliance on it. *See Conroy*, 203 P.3d at 1135

21   (elements of fraud include "knowledge of … falsity" and "intent to induce … reliance").

22   **B.      Aiding and Abetting**

23   The nature of Plaintiff's "aiding and abetting" cause of action is unclear. Offering only

24   vague accusations, Plaintiff claims that YouTube encouraged and assisted false copyright

25   claimants "in carrying out the scam," but she fails to identify the underlying offense with any

26   specificity. *Id*. ¶ 177. This leaves Defendants without fair notice of the claims alleged or any

27   meaningful opportunity to respond. Perhaps Plaintiff means to allege that YouTube is liable for

28   aiding and abetting supposed fraud and harassment by the alleged "false claimants." *See* Compl.

¶ 36 ("[P]laintiff has been cyber-stalked and harassed. In the depraved minds of these responders, as well as in the minds of the YouTube employees that aid and abet their actions, they are just, fair, and unequivocal[.]"). But even so construed, the allegation fails to state a claim. Plaintiff does not allege that YouTube had the knowledge necessary for aiding and abetting liability arising from any torts committed by the copyright owners who sent takedown requests to YouTube about Plaintiff's videos. *See Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d 813, 824 (Cal. Ct. App. 2014) ("A defendant is liable for aiding and abetting another in the commission of an intentional tort … if the defendant 'knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.'" (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Cal. Ct. App. 2005))).

### C.    Harassment

Plaintiff accuses YouTube of harassment by "orchestrating false strikes and blocks to plaintiff's channel with intent to terminate her account." Compl. ¶ 190. To state a claim for harassment under California law, Plaintiff must allege that YouTube's conduct "serves no legitimate purpose" and "would cause a reasonable person to suffer substantial emotional distress," *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1155 (N.D. Cal. 2013) (quoting Cal. Civ. Pro. Code § 527.6). Plaintiff does not—and cannot—claim that YouTube's notifications and "strikes" serve no legitimate purpose given YouTube's obligation to implement notice-and-takedown and repeat-infringer procedures under the DMCA. *See* 17 U.S.C. § 512(c)(1)(C) (requiring service providers to comply with notice-and-takedown requirement for safe harbor protection); *id.* § 512(i)(1)(A) (requiring service providers to implement and inform users of policy for terminating "repeat infringers"). Indeed, Plaintiff concedes that YouTube's business practices are motivated by legitimate copyright enforcement. Compl. ¶ 89 (alleging that "YouTube's Content ID system was created to prevent copyright infringers from claiming legitimate copyrighted works"). There can be no viable harassment claim arising from the operation of those legal procedures.

The factual allegations Plaintiff offers in support of her claim are entirely implausible. *See id.* ¶ 185. Plaintiff contends, for example, that "YouTube or its representative threatened

1   plaintiff by sending her a message with a scary face which stated: 'You'll never see me

2   coming.'" *Id*. ¶ 191. But she alleges no facts linking this supposed message to YouTube or any

3   of its employees. Baseless allegations such as these are insufficient to state a viable harassment

4   claim. In short, Plaintiff pleads no facts that would allow "the court to draw the reasonable

5   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[8]

6   **D.      Intentional Infliction of Emotional Distress**

7        Plaintiff's claim for intentional infliction of emotional distress fails to link her harm to

8   YouTube's actions. In particular, Plaintiff offers no plausible connection between YouTube and

9   the alleged disruptions of her internet connection, *id*. ¶ 205, malfunctions of her home computer,

10  *id*. ¶¶ 204-205, threatening messages on her cell phone, *id*. ¶ 194, theft of her identity, *id*. ¶ 198,

11  or the gun violence that prompted her to buy a bus ticket to Florida, *id*. ¶¶ 201-202. Once again,

12  Plaintiff's allegations do not "allow[] the court to draw the reasonable inference that the

13  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

14       But even assuming Plaintiff had plausibly related her claim to actions by YouTube, her

15  allegations still would fall short. Plaintiff fails to allege "extreme and outrageous conduct by the

16  defendant with the intention of causing, or reckless disregard of the probability of causing,

17  emotional distress." *Doe v. Gangland Prods.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting

18  *Davidson v. City of Westminster*, 649 P.2d 894, 901 (Cal. 1982)). While Plaintiff broadly claims

19

20

21       [8] Related to her harassment claim, Plaintiff also purports to assert "email tampering" and
    "computer hacking" claims. Compl. ¶¶ 239-270. She generally alleges that "YouTube knowingly

22  accessed, and without permission, damaged, altered, deleted and destroyed data in her home
    computer system, electronic mail accounts, and her personal websites, and cell phone with the

23  intent to devise or execute a scheme to cause distress, defraud, and deceive." *Id*. ¶ 251. As
    purported factual support, Plaintiff contends that YouTube stole her personal information in

24  order to buy an $800 cell phone, *id*. ¶ 266, accessed her Facebook profile with intent to post
    pornographic images, *id*. ¶ 268, changed the password to her AOL email account, *id*. ¶ 240,

25  disabled internet service on her laptop, *id*. ¶ 265, and "destroyed Microsoft Word 2003," *id*.
    ¶ 256. Here, too, however, Plaintiff offers no factual basis for these outlandish allegations. She

26  does not identify a particular person behind these attacks but simply contends that a
    "YouTube/Google employee," who has "impressive computer skills and evil abilities," "has been

27  stalking, hacking, cracking, and torturing plaintiff for years." *Id*. ¶¶ 76, 79. Plaintiff provides no
    explanation for why YouTube—a service that depends upon and benefits from the continued

28  contribution of video content by its users—or any of its employees would engage in a years-long
    effort to disrupt a single user's Internet access and damage her computer.

that "YouTube intentionally harassed [her] by damaging her YouTube channel with the intent to keep her channel in bad standing which would lead to termination of her account," Compl. ¶ 203, she offers no factual allegations—but merely conclusory statements, *see id*. ¶ 243—indicating that YouTube's responses to copyright-infringement notices constituted "extreme and outrageous conduct" or that such responses were driven by an intent to cause her emotional distress.

### E. Breach of the Implied Covenant of Good Faith

Plaintiff invokes the implied covenant of good faith and fair dealing, but even a generous interpretation of her Complaint does not state a claim. Plaintiff does not actually identify the underlying agreement with YouTube that gives rise to this cause of action or point to any provision of those agreements that YouTube supposedly failed to apply in good faith. Plaintiff's allegations thus do not establish that YouTube "deprive[d] her of the benefits she was due under a contract." *Jenkins v. JPMorgan Chase Bank, N.A.*, 156 Cal. Rptr. 3d 912, 937 (Cal. Ct. App. 2013); *see also Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (explaining that the covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.") (emphasis in original). Indeed, Plaintiff catalogues various alleged wrongs—including the supposed hacking of her home computer, changes to the font size in her documents, and "using macros on Plaintiff's complaint and other Word documents," Compl. ¶¶ 214-217—that, beyond being entirely fanciful, have nothing to do with any agreement she had with YouTube. Such conduct cannot give rise to a breach of an implied covenant claim. *See Jenkins*, 156 Cal. Rptr. 3d at 935 ("Without a contractual underpinning, there is no independent claim for breach of the implied covenant.") (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co*., 26 Cal. Rptr. 2d 762, 770 (Cal. Ct. App. 1994)).

Even where Plaintiff nods towards actions that seem related to the Terms of Service agreement and the Partner Program Terms, her allegations are entirely conclusory and confusing: "YouTube breached the covenant of good faith and fair dealing governing every copyright claim, strike and block to Ms. Lancaster's YouTube channel by using unfair tactics and hiding treachery behind an agreement that Ms. Lancaster was required to make in order to use

YouTube's service." Compl. ¶ 210.[9] This is not enough to state a claim. *Pena*, 976 F.2d at 471

("a liberal interpretation of a pro se … complaint may not supply essential elements of the claim

that were not initially pled. Vague and conclusory allegations … are not sufficient to withstand a

motion to dismiss."). As explained above, moreover, the broad discretion granted to YouTube

under the governing agreements to remove videos suspected of copyright infringement and to

terminate monetization of videos "at any time" precludes any claim in this case for breach of an

implied covenant of good faith. Willen Decl. Ex. A ¶ 4(J), Ex. B; *see, e.g., Carma Developers*,

826 P.2d at 728.[10]

### F.     Negligence

Plaintiff claims Google administrators were "negligent of maintaining internal control of

over [their] employees" and "failed to develop and document effective policies and procedures

governing the acts of its YouTube employees." *Id*. ¶¶ 273-274. She does not, however, identify

any legal duty owed by Defendants to Plaintiff or clearly articulate a causal relationship between

the alleged breach and Plaintiff's harm. Furthermore, a negligent supervision claim under

California law requires "knowledge by the principal that the agent or servant was a person who

could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc.*,

97 Cal. Rptr. 2d 12, 25 (Cal. Ct. App. 2000) (quoting *Noble v. Sears, Roebuck & Co.*, 109 Cal.

Rptr. 269, 275 (Cal. Ct. App. 1973)); *see also Albert v. Mid-Century Ins. Co.*, 187 Cal. Rptr. 3d

---

[9] Plaintiff also claims that YouTube improperly disabled and refused to restore monetization of her content after just one "strike." Compl. ¶¶ 58-60. But she does not identify any agreement that guarantees YouTube will only restrict Plaintiff's account after multiple strikes. To the contrary, as explained, the Partner Program Terms say clearly the ability to monetize videos "is subject to termination at any time at Google's sole discretion." Willen Decl. Ex. B.

[10] Related to her claim for a breach of the implied covenant of good faith, Plaintiff also purports to assert a "declaratory relief" claim sounding in contract. Compl. ¶¶ 152-56. She generally alleges that "[t]he agreement prohibits special, punitive, or consequential damages," and that this prohibition is "unconscionable and … void as against policy and unenforceable." *Id.* ¶¶ 153-54. This argument has repeatedly been rejected, including in a very recent ruling by Judge Whyte, who explained that the same YouTube Terms of Service at issue here, including the provision limiting damages, are enforceable and neither procedurally nor substantively unconscionable. *See Darnaa, LLC v. Google. Inc.*, No. 15-cv-03221-RMW, 2015 U.S. Dist. LEXIS 161791, at *4-10 (N.D. Cal. Dec. 2, 2015) (rejecting argument that YouTube's Terms of Service are unconscionable and explaining that "[b]ecause YouTube offers its hosting services at no charge, it is reasonable for YouTube to … minimize its exposure to monetary damages").

211, 220 (Cal. Ct. App. 2015) ("Negligent supervision requires an employer supervising an employee; who is incompetent or unfit; the employer had reason to believe undue risk of harm would exist because of the employment; and the harm occurs."). Plaintiff pleads no facts regarding such knowledge on YouTube's part.

### G.       Copyright Infringement

Plaintiff accuses YouTube of engaging in "massive intentional copyright infringement" and brands its employees "copyright abusers." Compl. ¶¶ 224-238. This claim is incomprehensible and fails as a matter of law. Most obviously, Plaintiff has not shown that she owns a valid copyright. "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Here, however, Plaintiff expressly *disclaims* ownership of the public-domain works she posted to YouTube. Compl. ¶¶ 99, 177-180, 234 (describing films and television shows at issue as being "produced by the federal government" or "in the public domain"). By definition, Plaintiff cannot sue for infringement of public-domain works that she does not own. Nor can she claim any legal right under the Copyright Act to post or monetize such works using YouTube's service.

Even if Plaintiff had alleged valid copyright ownership of the videos at issue, her claim still would fail because she has not alleged a violation of any exclusive right protected by the Copyright Act. The statute grants copyright holders the exclusive rights to reproduce, to prepare derivative works, to distribute copies, and to perform their copyrighted works. 17 U.S.C. § 106. To state a claim for copyright infringement, Plaintiff would have to allege that YouTube's alleged actions infringed on one of these exclusive rights. But *removing* a copyrighted work from a website does nothing of the sort. By disabling Plaintiff's videos and/or preventing them from being monetized, YouTube did not copy, publicly display, or distribute those works, and there can accordingly be no claim for copyright infringement.

Finally, insofar as Plaintiff seeks to bring a claim for "copyright fraud" under 17 U.S.C. § 506(c), *see* Compl. ¶ 236, it is well settled that "[f]raudulent copyright noticing is a criminal offense … for which there is no private cause of action." *Kwan v. Schlein*, 441 F. Supp. 2d 491,

1  506 (S.D.N.Y. 2006); *see also Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*,

2  785 F.2d 897, 912-13 (11th Cir. 1986).

3  **IV.    ALPHABET IS NOT A PROPER DEFENDANT IN THIS CASE**

4         Beyond all the other problems with Plaintiff's complaint, her claims against Alphabet

5  must be dismissed because Alphabet is not a proper defendant in this case. Plaintiff makes no

6  specific factual allegation against Alphabet. Nor is there any basis to depart from the black-letter

7  law that a parent corporation cannot be held liable for the alleged wrongs of its subsidiaries.

8         As noted above, on October 2, 2015, Google implemented a holding company

9  reorganization, which resulted in Alphabet Inc., a newly created entity, owning all outstanding

10  capital stock of Google. Google became a wholly owned subsidiary of Alphabet; YouTube

11  remained a subsidiary of Google Inc. Plaintiff filed her complaint on October 2, 2015, alleging,

12  broadly, that YouTube violated federal copyright law by acting on false copyright infringement

13  notices. While Plaintiff's complaint is disjointed and difficult to follow, it is clear that her

14  allegations pertain to YouTube—not Alphabet.[11] Indeed, Alphabet did not even exist at the time

15  that much of the conduct at issue occurred.

16         The mere fact that Alphabet owns Google—which, in turn, owns YouTube—cannot

17  subject Alphabet to a suit like this. "It is a general principle of corporate law deeply ingrained in

18  our economic and legal systems that a parent corporation … is not liable for the acts of its

19  subsidiaries." *Bestfoods*, 524 U.S. at 61 (internal quotation marks omitted); *see also In re*

20  *Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("For the purposes of the

21  corporation law, the act of one corporation is not regarded as the act of another merely because

22  the first corporation is a subsidiary of the other, or because the two may be treated as part of a

23  single economic enterprise for some other purpose."). "Only in unusual circumstances will the

24  law permit a parent corporation to be held either directly or indirectly liable for the acts of its

25  subsidiary." *Freeney v. Bank of Am. Corp.*, No. CV 15-02376 MMM, 2015 U.S. Dist. LEXIS

26

27

28  _____

[11] Only once—and in broad, conclusory terms—does Plaintiff even mention Alphabet in connection with any of her allegations. *See* Compl. ¶ 17.

92848, at *47-48 (C.D. Cal. July 15, 2015) (quoting *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004)). A plaintiff seeking to pierce a corporate veil "must show that the interests of justice require it because matters like fraud, public wrong, or contravention of law [in the formation of the entities] are involved." *BASF Corp. v. POSM II Props. P'ship, L.P.*, No. 3608-VCS, 2009 Del. Ch. LEXIS 33, at *32 n.50 (Del. Ch. Mar. 3, 2009) (citing *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968)).

No such circumstances are present here. Plaintiff asserts no additional facts that would allow the Court to pierce the corporate veil and hold Alphabet liable for what its subsidiary is alleged to have done. Plaintiff does not—and could not—allege that YouTube is merely the "alter ego" of Alphabet. Nor could Plaintiff allege that the formation of Alphabet as a corporate entity separate from Google or YouTube was in and of itself fraudulent or contrary to law. *See, e.g., Energy Coal, S.P.A. v. CITGO Petroleum Corp.*, No. 2:14-CV-03092, 2015 U.S. Dist. LEXIS 116167, at *27 (W.D. La. Aug. 26, 2015) (rejecting alter ego theory under Delaware law where there were no allegations "that a fraud, public wrong, or contravention of law has been committed as a result of [a parent company and its subsidiary] being formed separately"). In short, Alphabet cannot be held liable for the alleged wrongdoing of its subsidiary, Google, or for the alleged wrongdoing of Google's subsidiary, YouTube. Accordingly, Alphabet must be dismissed from this case.

### CONCLUSION

For all of these reasons, the Court should dismiss Plaintiff's complaint. Because Plaintiff's claims fail as a matter of law based on the DMCA, section 230(c) of the CDA, and under the governing agreements, and because any amendment of her claims would be futile, dismissal should be with prejudice.

Dated: December 11, 2015

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____*/s Brian M. Willen*_____
         Brian M. Willen
         bwillen@wsgr.com

Attorney for Defendants