DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com

BRIAN M. WILLEN (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
Email: bwillen@wsgr.com

Attorneys for Defendants
ALPHABET INC., GOOGLE INC., and
YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEANNE Q. LANCASTER, an individual,<br><br>   Plaintiff,<br><br>  v.<br><br>ALPHABET INC., GOOGLE INC., YOUTUBE, LLC,<br><br>   Defendants. | CASE NO.: 15-cv-05299-HSG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Before: Hon. Haywood S. Gilliam, Jr.<br>Crtrm: 15<br>Date: February 4, 2016<br>Time: 2:00 pm |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    PLAINTIFF'S CLAIMS ARE BARRED BY THE DMCA, THE CDA, AND THE TERMS OF THE GOVERNING AGREEMENTS ............................................................. 2

II.   NONE OF PLAINTIFF'S CAUSES OF ACTION STATE A VIABLE CLAIM .............. 5

III.  ALPHABET IS NOT A PROPER DEFENDANT IN THIS CASE ................................... 7

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2008) ............................................................... 3

*BASF Corp. v. POSM II Props. P'ship, L.P.*, No. 3608-VCS, 2009 Del. Ch. LEXIS 33 (Del. Ch. Mar. 3, 2009) ................................................................................................ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 6

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ......................................................................... 1

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ..................................... 5

*Davidson v. City of Westminster*, 649 P.2d 894 (Cal. 1982) ...................................................... 6

*Doe v. Gangland Prods., Inc.*, 730 F.3d 946 (9th Cir. 2013) ...................................................... 6

*e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008) ............................ 3, 4

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ...................................... 5

*Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924 JF (HRL), 2011 U.S. Dist. LEXIS 94316 (N.D. Cal. Aug. 23, 2011) ............................................................... 4

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007) .................................................... 4

*Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629 (Del. 1968) ........................................... 8

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998) ................................................ 1

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, No. 15-CV-02442-LHK, 2015 U.S. Dist. LEXIS 154716 (N.D. Cal. Nov. 13, 2015) ..................................................... 3

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ............................................................ 3

### STATUTES

17 U.S.C. § 506 ............................................................................................................................. 7

17 U.S.C. § 512(f) ........................................................................................................................ 2

17 U.S.C. § 512(g) ............................................................................................................... 1, 2, 3

47 U.S.C. § 230(c) ............................................................................................................... 1, 3, 4

### RULES

Fed. R. Civ. P. 8 ........................................................................................................................... 5

Fed. R. Civ. P. 9 ........................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1, 5, 6

**INTRODUCTION**

Defendants Alphabet Inc., Google Inc., and YouTube, LLC ("Defendants" or "YouTube") respectfully submit this reply in support of their Motion to Dismiss. Defendants' opening brief ("MTD") explained that Plaintiff's pro se complaint is a largely unintelligible tangle of paranoia that does not state a viable claim and runs headlong into both governing federal law and the parties' own agreements. Plaintiff's opposition ("Opp.") only confirms that this case should be dismissed.

The crux of Plaintiff's case appears to be the allegation that YouTube removed or stopped monetization for certain of Plaintiff's videos after receiving notices from copyright owners complaining that the videos were infringing their copyrights. As a matter of law, those claims are barred by Section 512(g) of the Digital Millennium Copyright Act ("DMCA"), Section 230 of the Communications Decency Act ("CDA"), and the agreements that Plaintiff entered into with YouTube when she posted her videos and elected to run advertisements in connection with them. Plaintiff has little to say about these dispositive legal barriers, and what she does say is misguided. Beyond that, Plaintiff's opposition brief cannot remedy her failure to state a claim under the Federal Rules of Civil Procedure.

Rather than engage with YouTube's arguments, Plaintiff doubles down on her conspiracy theories. In her opposition papers, she puts forward various new factual allegations and exhibits, most of which have little to do with the allegations made in the complaint, and none of which make her claims any more factually or legally viable.[1] One new fact does stand out, however: Plaintiff tells the Court that when she recounted her allegations about YouTube to an independent physician (to whom she was referred by social workers sent to her apartment by the police), she was promptly diagnosed with "Delusional Disorder." Opp. at 21-23. This diagnosis

---

[1] It is, of course, black-letter law that a plaintiff cannot constructively amend her complaint by citing new evidence in an opposition to a motion to dismiss. *See, e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998))).

suggests that Plaintiff needs real medical help—not the power of federal court discovery in service of her baseless legal claims. Ms. Lancaster has YouTube's sympathies for her condition, but Plaintiff's diagnosed delusions only confirm that her claims are not sound and should not be allowed to proceed. The complaint should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY THE DMCA, THE CDA, AND THE TERMS OF THE GOVERNING AGREEMENTS

While Plaintiff's complaint and opposition papers are a jumble, there are simple, legally dispositive ways to resolve this case. YouTube's opening brief explained that two separate federal immunities, as well as the clear terms of the parties' governing agreements, all preclude Plaintiff's effort to hold YouTube liable for removing her videos in response to claims of copyright infringement.

**DMCA Immunity.** First, YouTube showed (MTD at 8-12) that Plaintiff's claims are barred by section 512(g) of the DMCA, which says expressly that "a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing." 17 U.S.C. § 512(g). Plaintiff offers almost no response except to assert, in a wholly conclusory fashion, that "YouTube acted in **bad** faith when it fraudulently accused Plaintiff of over 450 copyright infringements." Opp. at 14. But, as YouTube has explained, section 512(f)'s good-faith language requires only that YouTube *subjectively believed* that the takedown requests it received were valid. MTD at 11-12. Plaintiff does not allege otherwise, nor could she. Indeed, it is apparent even from the complaint that YouTube removed Plaintiff's videos as part of its ordinary processes for responding to third-party infringement claims. *See, e.g.*, Compl. Ex. G. There is no factual basis for suggesting that YouTube knew or believed that those claims were invalid. YouTube's decisions to remove Plaintiff's videos in response to such claims is precisely what section 512(g) shields from

1  liability. Plaintiff cannot evade that statutory immunity simply by declaring that YouTube had an
2  ulterior motive or that the material at issue was not, in fact, infringing.

3        **CDA Immunity.** YouTube has also explained that section 230(c) of the CDA
4  independently protects it from claims arising from the removal of Plaintiff's videos. *Id*. at 12-14.
5  Plaintiff has no real response. She does not engage with any of the case law that YouTube cited
6  or with the CDA's language or purpose.

7        Instead, Plaintiff first says that she (rather than YouTube) is the publisher of videos she
8  uploaded to YouTube. Opp. at 17. That misses the point of section 230(c)(1). That provision
9  immunizes the provider of an "interactive computer service" for exercising "traditional editorial
10 functions—such as deciding whether to publish, withdraw, postpone or alter content" that
11 originates with a third-party user of the service. *Zeran v. Am. Online, Inc*., 129 F.3d 327, 330
12 (4th Cir. 1997). This case involves YouTube's decision to remove Plaintiff's videos, and
13 "removing content is something publishers do." *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1103 (9th
14 Cir. 2009). In seeking to hold YouTube liable for taking down her videos, therefore, Plaintiff
15 seeks to treat YouTube as a publisher, which section 230(c)(1) does not allow. To the contrary,
16 as Judge Koh has explained, the removal of user material is a paradigmatic—and protected—
17 editorial decision. *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, No. 15-CV-02442-LHK, 2015
18 U.S. Dist. LEXIS 154716, at *13-18 (N.D. Cal. Nov. 13, 2015). In short, while Plaintiff may be
19 responsible for the content of her videos, imposing liability on YouTube for hosting and
20 removing those videos is forbidden by section 230(c)(1).

21       As for section 230(c)(2), Plaintiff argues that her videos were not obscene. Opp. at 17.
22 That is irrelevant. As the statute's plain language reflects, CDA immunity is not limited to
23 obscene material or content that is sexually explicit. Instead, section 230(c)(2) immunizes service
24 providers for actions taken to restrict the availability of material that they (or their users) not only
25 consider "obscene, lewd, lascivious, filthy, excessively violent, [or] harassing," but also that they
26 deem "otherwise objectionable" in ways not specified in the statute. 47 U.S.C. § 230(c)(2). The
27 provision thus is routinely applied to material that is not even arguably obscene. *See, e.g.*,
28 *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 607 (N.D. Ill. 2008) (dismissing

claims under section 230(c)(2) arising out of service provider's blocking of email spam); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (dismissing claim against Google for refusing to display advertisements from plaintiff that Google believed violated a prohibition on attack ads). And, by any measure, a video claimed to be copyright infringing is material that YouTube and its users can (and do) consider to be objectionable. In removing such videos, YouTube acted well within the immunity that section 230(c)(2) provides.

Moreover, it is clear from the text of the statute that whether material is objectionable is a subjective determination to be made by the service provider and its users. What matters is not whether the content is actually objectionable (or infringing) measured by some objective, after-the-fact standard. Instead, the relevant question is simply whether the service provider or its users "consider" it to be objectionable—that is, whether they believed that the material violated applicable policies and should be removed on that basis. *See Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924 JF (HRL), 2011 U.S. Dist. LEXIS 94316, at *6-7 (N.D. Cal. Aug. 23, 2011) (explaining that "immunity is focused upon the provider's subjective intent"); *e360Insight*, 546 F. Supp. 2d at 608 ("[S]ection 230 imposes a subjective element into the determination of whether a provider . . . is immune from liability."). As discussed above, that is the situation here, and YouTube is immune under section 230(c)(2) of the CDA as well.

**Contractual Immunity.** Finally, Plaintiff offers no meaningful response to YouTube's showing that the governing agreements—YouTube's Terms of Service and Partner Program Terms—bar any cause of action premised on the claim that YouTube breached a duty to Plaintiff by removing her videos. As explained in Defendants' opening brief (MTD at 14-17), those agreements expressly authorize YouTube to remove Plaintiff's videos and stop allowing her to monetize them based on allegations or suspicions of copyright infringement. That is what happened here. In tension with her own allegations, Plaintiff's opposition says that "YouTube has not discontinued any aspect of the service relating to Plaintiff's channel." Opp. at 18. If Plaintiff now believes that is so, it is even more difficult to understand her claims. In any event, YouTube's relevant rights under the agreements go well beyond its right to discontinue any aspect of the service. The agreements also expressly state that "YouTube will remove all Content

if properly notified that such Content infringes on another's intellectual property rights" and that monetization "is subject to termination at any time at Google's sole discretion." MTD at 15-16. Plaintiff says nothing about these provisions, which alone are sufficient to defeat her claims for breach of contract, negligence, and fraud.

**II.     NONE OF PLAINTIFF'S CAUSES OF ACTION STATE A VIABLE CLAIM**

Beyond these overarching legal protections, YouTube also showed that Plaintiff's complaint fails to state a claim under Fed. R. Civ. P. 8, 9, and 12(b)(6) because her allegations are unintelligible and implausible and the complaint does not plead the elements required for the various causes of action alleged. *Id*. at 7-8, 17-24. Plaintiff offers no meaningful response. Defendants will briefly address each of her claims in turn:

**Fraud.** Plaintiff's opposition repeats vague allegations that do not satisfy Rule 9(b). *See, e.g.*, Opp. at 4 ("Each time YouTube removes one of Plaintiff's PD videos they are misrepresenting the facts."). Most importantly, Plaintiff fails to identify with particularity the false statement(s) that YouTube allegedly made, let alone explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Plaintiff states in vague and conclusory terms that YouTube "[e]ngages in a practice of fraudulently misrepresenting the true copyright holder of public domain videos." Opp. at 5. But this fails to satisfy Rule 9's pleading standard, as it points to no actual statement that YouTube made that is allegedly false. Indeed, in the materials that Plaintiff references in her complaint, the statements regarding copyright ownership of the material in Plaintiff's videos are all coming from third-party copyright owners, not YouTube. *E.g.*, Compl. Ex. G. Beyond that, Plaintiff does not even attempt to explain how she detrimentally relied on any alleged misrepresentations that YouTube made regarding the videos. Without such reliance, there can be no claim for fraud. MTD at 18.

**Aiding and Abetting.** Plaintiff fails to clarify what she believes to be the underlying offense that YouTube is supposedly aiding and abetting, though it appears that she is alleging a scheme for copyright infringement. *See* Opp. at 8 ("YouTube assists false claimants in carrying

out *the copyright scheme* by expediting the electronic process and protecting the false claimants by issuing copyright infringements to the YouTube partner instead." (emphasis added)). If so, Plaintiff's aiding and abetting claim is really just a disguised claim for contributory copyright infringement, which fails because Plaintiff has no valid copyright interest in public domain works, as discussed below. In addition, Plaintiff's unsupported assertion that YouTube had the knowledge required for aiding and abetting (*id.*) is precisely the kind of "formulaic recitation of the elements of [the] cause of action" that does not meet the requirements of Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Harassment, Computer Hacking, and Intentional Infliction of Emotional Distress.** Plaintiff's opposition discusses at length the allegedly threatening messages left on her cell phone, as well as gun violence and technological malfunctions that she claims to have experienced. Opp. at 9. But nowhere does she offer any factual allegations plausibly suggesting that YouTube was responsible for or involved in those acts. Her conclusory assertions of YouTube's involvement (*id.* at 11-12) are insufficient. Plaintiff's statement that "[t]here is no other entity or individual with the sophisticated means" to hack her computer (*id.* at 9) underscores that Plaintiff has no actual basis for contending that YouTube is involved in the hacking and other harassment she describes. Allegations such as these are by definition speculative and insufficient to state a claim. In order to bring a civil claim under the Computer Fraud and Abuse Act, moreover, Plaintiff would have to allege that she suffered a loss of "at least $5,000 in value," 18 U.S.C. § 1030c)(4)(A)(I), (g), which she does not do. Finally, as for the intentional infliction claim, Plaintiff concedes by her silence that the complaint fails to allege, as required by California law, that YouTube's conduct was either "extreme and outrageous" or driven by a specific intent to cause her emotional distress. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster*, 649 P.2d 894, 901 (Cal. 1982)).

**Breach of the Implied Covenant of Good Faith.** Plaintiff's opposition does not explain how many of the harms alleged in the complaint—including changes to the font size in her documents (Compl. ¶ 215)—are connected to any agreement between Plaintiff and the

1  Defendants. Plaintiff's assertion that she "did not get a full 55% of the earnings" from the videos
2  she posted (Opp. at 10), ignores that YouTube has the unfettered right to remove content or
3  disable advertising "at any time." Willen Decl. Ex. A ¶ 4(J), Ex. B. YouTube cannot be held
4  liable for breach of an implied covenant for acting in ways that are expressly authorized by the
5  terms of the governing agreements. MTD at 21-22.

6  **Negligence.** Plaintiff acknowledges that "YouTube may not have had any direct duty
7  owed to Plaintiff." Opp. at 12. She appears to suggest that a legal duty arose "by way of the
8  statutory requirements of the DMCA" but offers no explanation of what that duty is. *Id*. That is
9  not surprising given that (1) compliance with the DMCA's notice-and-takedown regime is
10 voluntary and (2) the statute expressly immunizes service providers for removing material in
11 good-faith reliance on takedown notices or claims of copyright infringement. Beyond that, the
12 opposition makes no attempt to explain how the complaint satisfies the knowledge element of
13 Plaintiff's negligence claim. MTD at 22-23.

14 **Copyright Infringement.** As explained in YouTube's opening brief, Plaintiff cannot
15 assert a copyright infringement claim for works in the public domain because, by definition,
16 Plaintiff cannot own the copyright in such works. MTD at 23. Plaintiff is simply mistaken in
17 asserting that "[f]or public domain works, copyright is given." Opp. at 11. Quite the opposite: the
18 whole point of having a work in the public domain is that no one owns the copyright and no one
19 can sue for infringement. Without being able to point to a valid copyright interest in the material
20 in her videos, Plaintiff cannot sue for infringement. Beyond that, the opposition brief does not
21 even try to argue that YouTube, by removing Plaintiff's videos, somehow infringed on any of the
22 exclusive rights that the Copyright Act reserves for copyright owners. Finally, while Plaintiff
23 reverts to her claim for copyright fraud (*id.*), she neither acknowledges nor makes any effort to
24 rebut YouTube's showing that the relevant provision of the Copyright Act (17 U.S.C. § 506)
25 does not confer a private right of action. MTD at 23-24.

26 **III.   ALPHABET IS NOT A PROPER DEFENDANT IN THIS CASE**

27 Plaintiff asks the Court to abandon black-letter principles of corporate law, which do not
28 permit claims against a parent company for the acts of its subsidiaries, merely on the basis of a

1  CNET article regarding Alphabet Inc.'s decision to report financial results for Google Inc.'s
2  businesses as a single group. Opp. at 19. Even crediting this newly introduced article, it provides
3  no basis for piercing the corporate veil between Alphabet and the other Defendants, a step
4  reserved for extreme cases where "the interests of justice require it because matters like fraud,
5  public wrong, or contravention of law [in the formation of entities] are involved." *BASF Corp. v.*
6  *POSM II Props. P'ship, L.P.*, No. 3608-VCS, 2009 Del. Ch. LEXIS 33, at *32 n.50 (Del. Ch.
7  Mar. 3, 2009) (citing *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968)).

## CONCLUSION

For these reasons, as well as those given in YouTube's opening brief, the Court should dismiss Plaintiff's complaint with prejudice.

Dated: January 11, 2016

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s Brian M. Willen_____
   Brian M. Willen
   bwillen@wsgr.com

Attorney for Defendants
ALPHABET INC., GOOGLE INC., and
YOUTUBE, LLC